UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARGARET McCARTY, | : | Case No. 3:10-cv-75 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS NOT
SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS REVERSED;
(2) THIS MATTER IS REMANDED TO THE ADMINISTRATIVE LAW JUDGE
UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g);
AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

not entitled to Supplemental Security Income ("SSI"). (*See* Administrative Transcript

("Tr.") 25-41).

**I.**

On September 6, 2005, Plaintiff filed an application for SSI alleging she became

disabled on January 1, 2003 as a result of hip and back problems, as well as depression

and other psychological issues. (Tr. 84). The claim was denied initially and on

reconsideration, and Plaintiff timely filed for a hearing *de novo* before an ALJ. On

September 11, 2008, ALJ Melvin A. Padilla held a hearing at which Plaintiff, represented

by counsel, and a vocational expert appeared and testified. (Tr. 902-29). On December

23, 2008, the ALJ issued a decision finding that Plaintiff was not disabled because she

had the residual functional capacity ("RFC") to perform a range of light exertional work

for which there were a significant number of jobs. (Tr. 25-41). Plaintiff sought review

by the Appeals Council, which denied the request on January 7, 2009, making the ALJ's

decision the final decision of the Commissioner. (Tr. 9-12). Plaintiff thereafter instituted

this action in federal court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review

of the Commissioner's final decision.

At the time of the alleged onset of her disability, Plaintiff was a 45 year old with a

ninth grade education whose past relevant work experience was as a bartender. (Tr. 200,

907).

The ALJ's "Findings of Fact and Conclusions of Law," which represent the

rationale of his decision, were as follows:

1.  The claimant has not engaged in substantial gainful activity since
    September 6, 2005, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following "severe" impairments: residuals of a right
    hip arthroplasty with associated ongoing right hip arthritis, mild
    degenerative arthritis in her left hip, a history of alcohol abuse in alleged
    early remission, residuals of lumbar fusion surgery, and depression (20 CFR
    416.921 *et seq.*).

3.  The claimant does not have an impairment or combination of impairments
    that meets or medically equals one of the listed impairments in 20 CFR Part
    404, Subpart P, Appendix 1 (20 CFR 416.925 and 916.926).

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). However, she must be permitted to alternate position at fifteen-minute intervals and is restricted to only occasional stooping, crouching, and climbing of stairs. She should not climb ladders, ropes or scaffolds, or otherwise work at unprotected heights and is limited to performing inside work in temperature-controlled, clean-air environments. She is also restricted to performing low-stress, unskilled, simple, repetitive tasks which do not involve extended period of concentration, fast-paced work, strict production quotas, interpersonal contact with members of the general public, or contact with drugs or alcohol as part of her job duties.

5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.   The claimant was born on October 1, 1957 and was forty seven years old, which is defined as a younger individual age 18-49, on the date the application was filed. She subsequently turned fifty years of age for Social Security purposes on September 30, 2007 (the day prior to the actual anniversary of his birth in accordance with 20 CFR 416.120) and is now classified as an individual "closely approaching advanced age" (20 CFR 416.963).

7.   The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.   Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since September 6, 2005, the date the application was filed (20 CFR 416.920(g)).

On appeal, Plaintiff argues that the ALJ erred by: (1) discounting Plaintiff's treating physicians' opinions regarding her physical limitations and ultimately finding her to be less physically limited than she is; and (2) discounting Plaintiff's treating psychiatrist's opinion regarding her mental limitations and ultimately finding her to be less mentally limited than she is.  Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

-4-

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to SSI. 20 CFR § 416.912(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least 12 months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

As her first assignment of error, Plaintiff argues that the ALJ erred by dismissing the opinions of her treating physicians, relying instead on a "synthesis" of the opinions of two state agency reviewing physicians, and consequently finding Plaintiff to be less physically limited than she is.

20 CFR § 416.927 dictates how the ALJ is to weigh treating physician opinions in SSI cases. Generally, the opinion of a treating physician is given greater weight than that of a non-treating physician. 20 CFR § 416.927(d)(2). This is because treating physicians:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id*.

The ALJ must give a treating physician's opinion controlling weight if he finds it "well-supported by medically acceptable clinical and laboratory diagnostic techniques"

-5-

and "not inconsistent with the other substantial evidence in [the] case record." *Id*. If he

does not grant it controlling weight, the ALJ must determine the value it deserves by

applying certain factors, namely: the length of the treatment relationship and frequency of

examination; the nature and extent of the treatment relationship; the nature and extent of

relevant evidence that the treating physician presents supporting his opinion; the

consistency of the opinion with the record as a whole; the treating physician's

specialization; and any other factor the claimant presents that tends to support or

contradict the opinion. 20 CFR § 416.927(d)(2)-(6).

A decision denying benefits "must contain specific reasons for the weight given to

the treating source's medical opinion, supported by the evidence in the case record, and

must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight."

SSR 96-6p. This rule forces an ALJ to explain his decision to a claimant who may not

otherwise understand why she is being denied disability when her own doctor considers

her disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Furthermore, it "ensures that the ALJ applies the treating physician rule and permits

meaningful appellate review of the ALJ's application of the rule." *Id*.

> Because of the significance of the notice requirement in
> ensuring that each denied claimant receives fair process, a
> failure to follow the procedural requirement of identifying the
> reasons for discounting the opinions and for explaining
> precisely how those reasons affected the weight accorded the
> opinions denotes a lack of substantial evidence, even where

-6-

the conclusion of the ALJ may be justified based upon the
record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-3 (6th Cir. 2007).  "Consistent with
this principle, courts have remanded the Commissioner's decisions when they have failed
to articulate 'good reasons' for not crediting the opinion of a treating source, as [20 CFR
§ 416.927(d)(2)] requires."  *Wilson* at 545.

Importantly, the "determination of disability is ultimately the prerogative of the
Commissioner, not the treating physician."  *Stiltner v. Comm'r of Soc. Sec.*, 244 Fed.
Appx. 685, 689 (6th Cir. 2007) (quotations omitted); *see also* 20 CFR § 416.927(e)(1).
Thus, a treating physician's statement that a claimant is "totally disabled" is entitled to
little or no weight unless it is "well-supported by medically acceptable clinical and
laboratory diagnostic techniques."  *Stiltner*, 244 Fed. Appx. At 689; 20 CFR
§ 416.927(d)(2).

Finally, unlike that of a treating physician, an opinion from a non-treating
physician does not receive a preference under the regulations.  *See* 20 CFR 416.927(d)(2).
The weight accorded a non-treating physician's opinion is determined by applying the
factors found in 20 CFR § 416.927(d)(2)-(6).

Plaintiff's treating pain specialist, Dr. Andorfer, completed interrogatories at
Plaintiff's counsel's request in November 2007.  At the time, Plaintiff had been a patient
of Dr. Andorfer for more than six years, from April 2001 up through the date of  the
interrogatories. (Tr. 763).  Dr. Andorfer believed Plaintiff to be significantly limited in

-7-

her physical abilities, such that she could not lift more than five pounds occasionally or two pounds frequently, could not stand or walk more than more than fifteen minutes at a time or two hours per day, and could not sit for more than thirty minutes at a time or two hours per day. (Tr. 774). Dr. Andorfer ultimately believed Plaintiff did not have the RFC to perform even sedentary work and concluded she was "totally disabled and unable to sustain remunerative employment on a full-time basis due to moderate to severe lumbar spine pathology, moderate to severe chronic pain, and moderate to severe dysthymia secondary to chronic pain and polycystic disease with multi-organ involvement." (Tr. 762).

Plaintiff's primary care physician, Dr. Venkatesh, also completed interrogatories in November 2007. Plaintiff was in her care for some five years at that point. (Tr. 761). Dr. Venkatesh put forth a similarly dim opinion, though one which emphasized Plaintiff's mental problems, and their effect on her physical limitations and vice versa, to a much greater degree than did Dr. Andorfer's. In this vein, Dr. Venkatesh noted: "[Plaintiff] is very unstable mentally." (Tr. 761). "She has had severe depression." (*Id.*). "[Plaintiff] has very severe mood swings!" (Tr. 759). In addition to "[m]ood disorder she also has social anxiety disorder." (Tr. 754). "Very sensitive and easily distracted. [Plaintiff] gets depressed easily." (Tr. 749). "[Plaintiff] has a low pain threshold and severe depression. This worsens her ability to tolerate pain and physical limitations." (Tr. 748). Dr. Venkatesh considered Plaintiff's back pain so severe that she was unable to walk without

a walker or cane. (Tr. 597).  She believed Plaintiff could lift ten pounds occasionally and five pounds frequently, and could stand and walk for only one hour and sit for less than two hours during an eight hour workday. (Tr. 757).  Dr. Venkatesh too ultimately concluded that Plaintiff was unable to perform even sedentary work. (Tr. 760).

The ALJ dismissed both opinions, for similar reasons.  He deemed Dr. Andorfer's opinion "disproportionate to the level of residual functional limitation [Plaintiff] experiences as a result of her prior now remote right hip replacement surgery and the more recent lumbar fusion." (Tr. 35).  In support, the ALJ cited records from various medical personnel allegedly evidencing the "favorable surgical results from both of these procedures."  The ALJ also looked askance at Dr. Andorfer's extreme assessment because he only saw Plaintiff every two to three months.  "[Plaintiff's] frequency of contact is not consistent with a severe incapacity level of pain," the ALJ wrote.  (*Id.*).  The ALJ speculated that Dr. Andorfer "based his conclusion regarding [Plaintiff's] level of residual pain entirely upon her subjective allegations and complaints with no serious consideration of whether they are consistent with the electrodiagnostic testing and other objective medical evidence in the record." (*Id.*).  The ALJ likewise referenced medical records seemingly contradicting Dr. Venkatesh's dire assessment of Plaintiff's back pain. Furthermore, the ALJ declined to give significant weight to either Dr. Venkatesh's or Dr. Andorfer's opinions concerning Plaintiff's mental or psychological limitations.  Because neither is a mental health professional, the ALJ considered the subject beyond their ken.

(Tr. 34, 35).

Rather than rely on the opinions of Plaintiff's treating physicians, the ALJ rested his decision on a combination of opinions by two state agency physicians, Dr. Villanueva and Dr. Perencevich. Dr. Villanueva reviewed Plaintiff's medical file and completed a Physical RFC Assessment form on July 7, 2003. The doctor believed Plaintiff had somewhat mild exertional limitations - she could lift and/or carry twenty pounds occasionally and ten pounds frequently, and could stand, walk, and/or sit for six hours per workday - and noted that "[m]edical evidence shows normal [range of motion] in back and hips. Normal strength all over." (Tr. 302). Dr. Villanueva did limit Plaintiff to no squatting or bending because of her hip replacement surgery. (*Id.*). The ALJ noted that Dr. Villanueva believed Plaintiff had the RFC to perform light exertional work. (Tr. 32).

Similarly, Dr. Perencevich also completed a Physical RFC Assessment form one year after Dr. Villanueva, on July 8, 2004, though he actually evaluated Plaintiff in addition to her medical history. Dr. Perencevich too considered Plaintiff to have only modest exertional limitations - the ability to lift twenty pounds occasionally and ten pounds frequently, to stand and/or walk at least two hours per workday, and to sit for six hours per work day - and also found Plaintiff to have range of motion and strength in her back and hips. (Tr. 435). Another physician, Dr. Rath, reviewed Dr. Perencevich's opinion and agreed with it. (Tr. 438).

Though the ALJ does not forthrightly admit it, both Dr. Villanueva and Dr. Perencevich's opinions were rendered prior to Plaintiff's lumbar fusion surgery, which Plaintiff underwent in October 2004. It is perplexing, then, how the physicians' opinions, whether in separate or synthesized form, could be seriously probative of Plaintiff's limitations when they do not even account for the effects of a major back surgery.

Nevertheless, the ALJ attempted to bolster the melded version of the state agency physicians' assessments with putatively supportive medical records from other physicians. The ALJ stated that notes from the orthopedic hip surgeon, Dr. Deboo, who performed Plaintiff's hip replacement surgery in January 2000, reveal that in December 2000 Plaintiff was doing well. (Tr. 276, 33). A state agency physician, Dr. Padamadan, is said to have essentially agreed with Dr. Deboo after examining Plaintiff in June 2003. (Tr. 292-99, 33). Neither, of course, has much relevance to Plaintiff's post-surgery back problems from late 2004 on.

More to the point, the ALJ cited Dr. Cole, the surgeon who performed Plaintiff's lumbar fusion surgery in October 2004, regarding her back troubles. The ALJ stated that Dr. Cole reported negative lumbar spine nerve provocation testing in a December 2004 evaluation. (Tr. 406, 33). However, the ALJ does not relate progress notes from that same visit with Dr. Cole showing Plaintiff complained of a lot of pain, problems going up steps, and having to use a walker, or that during later visits she continued to complain of serious back pain, including in January 2005 after a fall down a flight of stairs, and in

May 2005 when she stated she was doing "'worse.'" (Tr. 407, 466, 468). Not only do these facts tend to cast doubt on the state agency physicians' opinions, they may in fact bolster those of Plaintiff's treating physicians.

The ALJ also referenced EMG testing from June 2005 showing no evidence of lumbar radiculopathy. (Tr. 464, 33). The ALJ does not report that Plaintiff complained of "chronic low back pain and bilateral lower limb pain," as well as "numbness in her legs," during the EMG testing, which, again, does not fit neatly with the state agency physicians' opinions and seems to support the treating physicians'. (Tr. 463). Later imaging tests, the ALJ admitted, "suggest some possible loosening of pedicle screws." (Tr. 33). Yet the ALJ minimized this finding by citing consulting neurologist Dr. Gewirtz's opinion that an April 2006 CT scan revealed no evidence of such "hardware displacement," and, nonetheless, the ALJ quotes him as "'not see[ing] anything major wrong with her prior surgery or the remainder of her spine." (Tr. 33, 663). Once more, however, the ALJ left out that Dr. Gewirtz stated in those same April 2006 notes that he believed Plaintiff suffered from "a failed back syndrome." (Tr. 663). Furthermore, in September 2006, Dr. Gewirtz noted that medical imaging tests showed Plaintiff "clearly has residual nerve damage." (Tr. 658). Dr. Gewirtz ultimately believed nothing surgically could be done to assuage Plaintiff's pain. (*Id.*).

After somewhat selectively referencing medical reports in an attempt to buttress the state agency reviewing physicians' integrated opinion formulated prior to Plaintiff's

-12-

back surgery, the ALJ concluded, "[w]hile she likely has some back pain related to her prior spinal fusion, the record does not demonstrate that she has any nerve root compression or other acute spinal pathology which would render her unable to perform light level work on a consistent basis." (Tr. 33).

The ALJ's dismissal of Plaintiff's treating physicians' opinions was improper and his reliance on a blended version of the state agency physicians' opinions was misguided. The ALJ did not give adequate attention to the significant record supporting both Dr. Andorfer's and Dr. Venkatesh's opinions. Upon a close examination, the ALJ simply did not provide "good reasons" for discounting their opinions. Consequently, the ALJ's decision on this point is not supported by substantial evidence.

Furthermore, the ALJ's decision to use the state agency physicians' opinions as the basis for his RFC determination is likewise not supported by substantial evidence. Both opinions were made prior to Plaintiff's spinal fusion surgery. Even if subsequent medical records may lend support to their RFC assessments - an entirely questionable proposition - it is nonetheless inappropriate to found the key determination in the case on their outdated assessments. Each physician's opinion must be weighed under the factors found in 20 CFR § 416.927(d)(2)-(6), quoted *supra*. The synthesized opinion is profoundly lacking with regard to several factors, including the nature and extent of the treatment relationship, as well as in supportability and consistency. It is inconceivable that the opinion could have any appreciable value in explaining the severity of Plaintiff's back

-13-

problems when it was rendered prior to Plaintiff's major back operation. Therefore, the ALJ's decision to base his formulation of Plaintiff's RFC on a synthesized version of Dr. Villanueva's and Dr. Perencevich's opinions is not supported by substantial evidence, and it is reversed.

**B.**

For her second assignment of error, much like her first, Plaintiff maintains that the ALJ erred by dismissing the opinion of her treating psychiatrist, relying instead on that of the state agency examining psychologist, and consequently finding her to be less mentally limited than she is.

Substantial evidence may support the ALJ's decision. However, Plaintiff's treating physicians alleged that Plaintiff's physical and psychological limitations are inextricably intertwined, each exacerbating the other. (*See* Tr. 765-71, 748). 20 CFR § 416.929(b) envisions the possibility of as much, yet the ALJ barely mentioned this interplay, and only did so in discrediting the opinions of Plaintiff's pain management doctor and primary care physician regarding Plaintiff's psychological state. Therefore, it would be premature to rule on the propriety of the ALJ's decision in this regard until adequate consideration is given to Plaintiff's physical impairments and their interaction with her mental impairments.

### III.

The fourth sentence of 42 U.S.C. § 405(g) authorizes the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand empowers the district court to "order the [Commissioner] to consider additional evidence on remand to remedy a defect in the original proceedings, a defect with caused the [Commissioner's] misapplication of the regulations in the first place." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994).

Here, a sentence four remand is appropriate to permit the ALJ to reconsider Plaintiff's treating physicians' opinions in light of the entire medical record. The ALJ shall also order at least one independent medical evaluation. The ALJ may not rely solely on the opinions of the state agency physicians, Dr. Villanueva and Dr. Perencevich, as the basis for his RFC determination. The ALJ shall also consider the effects that Plaintiff's physical impairments may have on her mental impairments, and vice versa. In short, the ALJ must reassess Plaintiff's physical limitations and her mental limitations.

### IV.

For the foregoing reasons, Plaintiff's assignments of error are well taken. The ALJ's decision is not supported by substantial evidence, and it is reversed. This case is remanded under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner

shall reevaluate Plaintiff's physical and psychological limitations and the effects, if any,

each has on the other.

**IT IS SO ORDERED.**

Date: 3/30/11

Timothy S. Black
United States District Judge